[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 62.]

THE STATE EX REL. R. BAUER & SONS ROOFING & SIDING, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. R. Bauer & Sons Roofing & Siding, Inc. v. Indus. Comm.*, 1998-Ohio-310.]

*Workers' compensation—Violation of specific safety requirement—Claimants may amend their VSSR applications to clarify prior charges regardless of Industrial Commission deadlines or statutes of limitations—Industrial Commission did not abuse its discretion in finding that Ohio Adm.Code 4121:1-3-09(F)(1), the catch-platform requirement, applies to gutter repair.*

(No. 95-2633—Submitted August 19, 1998—Decided December 2, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD06-865.

––––––––––––––––

{¶ 1} Appellant, R. Bauer & Sons Roofing & Siding, Inc. ("Bauer"), seeks a writ of mandamus ordering appellee Industrial Commission to vacate its award of additional compensation to appellee Michael R. McClellan for Bauer's alleged violations of specific safety requirements ("VSSR"). The Court of Appeals for Franklin County denied the writ. Bauer appeals as of right.

{¶ 2} On August 16, 1990, McClellan sustained an industrial injury while working for Bauer. He fell approximately seventeen feet from a church roof as he attempted to remove the gutters, breaking his back and causing him to become paraplegic. McClellan's workers' compensation claim was allowed for "fracture of back, multiple injuries, closed head injury."

{¶ 3} McClellan filed his VSSR application in September 1991, alleging Bauer's violation of Ohio Adm.Code 4121:1-3-09(F)(1). This rule requires catch platforms according to certain specifications on roofing projects, but allows the use

of lifelines and safety belts "in lieu of" a catch platform. McClellan's application also referred to a "construction safety analysis" conducted by the Bureau of Workers' Compensation Division of Safety and Hygiene on the church roofing site several weeks before his accident. The report advised Bauer that the site was not in compliance with Ohio Adm.Code 4121:1-3-09(F)(1) because the roof did not have a "catch platform or other equal safety guards."

{¶ 4} A commission investigator looked into McClellan's accident and filed his report in February 1992. In November 1992, McClellan sent notice that he was amending his VSSR application to include a violation of Ohio Adm.Code 4121:1-3-03(J)(1). This rule requires personal protective equipment and specifies safety belts and lifelines for "all employees exposed to hazards of falling when the operation being performed is more than fifteen feet above ground." McClellan's amendment concededly came long after the deadline in Ohio Adm.Code 4121-3-20(A)(1), which allows the filing of amendments over two years after the date of injury only where the amendment is filed within thirty days of the claimant's receipt of the VSSR investigation report.

{¶ 5} The first time the commission heard the cause, it found a violation only of Ohio Adm.Code 4121:1-3-03(J)(1):

"On the date of injury, claimant was in the process of removing the gutter from a church roof. Work on the roof itself had been completed one week to one month earlier. Claimant was sitting or kneeling on the roof to reach down and work on the gutter, reportedly because the ground sloped and the work could not be done from a ladder. The area of roof at which claimant was working was approximately 20 feet long and, because of the slope of the ground, the distance from the ground to the roof was 11 feet, 8 inches at one end and 17 feet, 5 inches at the other end * * *. The undisputed affidavits of the claimant and of Tony Mills place claimant at or near the 17 foot, 5 inch location when claimant slipped and fell to the ground, causing the injuries of record.

"On the initial application, claimant alleged a violation of [Ohio Adm.Code] 4121:1-3-09, and specifically 4121:1-3-09(F)(1).  A reading of (F)(1) shows that that section makes reference to safety belts and a lifeline [as] being an acceptable alternative to the use of catch platforms.  By letter dated November 10, 1992, claimant's counsel requested an amendment of the application to allege a violation of 4121:1-3-03(J)(1), the section dealing with safety belts, lifelines and lanyards.  This requested amendment of the application is hereby allowed, as merely clarifying the previously stated claim, and * * * it [is] found that allowing this amendment does not unfairly prejudice the employer.

"No violation of 4121:1-3-09(F)(1) is found.  The clear intent of the provisions in   4121:1-3-09 is to provide protection to employees who are performing work *on* the roof itself, as opposed to merely working from a roof, out of convenience, as was the case here.

"A violation of 4121:1-3-03(J)(1) is found.  The proof establishes that claimant was performing an operation more than 15 feet from the ground when he fell and that safety belts and lanyards were not provided by the employer.  It is noteworthy that the Division of Safety and Hygiene had performed a safety survey for this employer, at this job site, on or about July 23, 1990, and one of the findings was that the roof was 'not provided with a catch platform or other equal safety guards.'  While the employer was actually performing work ON the roof at the time of this safety survey, at the least this employer, reportedly in business for 35 years, should have been put on notice that some type of safety precautions were [*sic* ] needed when work was being performed FROM the roof.

"It is ordered therefore that an additional award of compensation be granted to the claimant in the amount of 35 per cent of the maximum weekly rate under the rule of 'STATE EX REL ENGLE V. INDUSTRIAL COMMISSION,' 142 Ohio St. 425 [27 O.O. 370, 52 N.E.2d 743]."  (Emphasis *sic*.)

**{¶ 6}** Both McClellan and Bauer moved for rehearing pursuant to Ohio Adm.Code 4121-3-20(G)(1)(a) (rehearing warranted when motion presents "new and additional proof not previously considered and relevant to the [VSSR])." McClellan cited his affidavit statement that "removal and replacement of the gutters attached to the roof [of the church] [were] an integral part of the entire roofing task." On rehearing, a hearing officer found that Bauer had violated Ohio Adm.Code 4121:1-3-03(J)(1), as well as 4121:1-3-09(F)(1). The hearing officer relied on the same reasoning for allowing McClellan's amendment and finding a VSSR, adding that the construction safety analysis was "sufficient to put [Bauer] on notice of [a need for] roofing safety guards that go beyond a mere catch platform, i.e., lifebelts, lanyards, etc." And in determining Bauer's violation of the catch-platform requirement, the hearing officer explained:

"It is found that the employer violated Section 4121:1-3-09(F)(1) by failing to provide a catch platform for the roof from which the claimant fell. * * *

"The employer's argument that the first word of the paragraph, 'on,' relates to a requirement that the work being performed must be on the roof itself (as opposed to sitting on the roof while removing the gutters), is not well taken. Grammatically analyzed, the [g]ist [of the] sentence reads: 'On pitched roofs ... catch platforms shall be installed.' This is differentiated [from] the next paragraph which reads: 'On flat roofs ... a standard guardrail substantially fixed in place may be used.' In both instances, the [word] 'on' relates to the type of guarding which should be used with each kind of roof, not the type [of] work being performed. Furthermore, the claimant states in his affidavit of June 16, 1993, that not only [were] the removal and repair of gutters a typical part of a roofing contract, but that [they were] a particular part of the contract that the employer had with the church. The employer has not provided any evidence to the contrary. [Ellipsis *sic.*]

" * * *

"It is therefore ordered that an additional award of compensation be granted to the claimant in the amount of 40 per cent of the maximum weekly rate under the rule of 'STATE EX REL. ENGLE V. INDUSTRIAL COMMISSION,' 142 Ohio St. 425 [27 O.O. 370, 52 N.E.2d 743]."

{¶ 7} Bauer requested the instant writ of mandamus in the court of appeals after its second request for rehearing was denied. A referee found a violation of the catch-platform requirement, but not the safety-belt/lifeline requirement charged in McClellan's amendment. The referee concluded that the amendment was untimely because, even if it was a mere clarification under Ohio Adm.Code 4121-3-20(A)(1), the amendment was not filed as required within thirty days of receipt of the investigator's report. And while the referee indicated that the commission's first decision to grant rehearing may have been error, he considered the commission's original interpretation of the catch-platform requirement so "tortur[ed]" that a corrective writ of mandamus would have had to issue anyway. The referee thus recommended a writ ordering the commission to reassess Bauer's forty-percent penalty based only on the catch-platform VSSR.

{¶ 8} On both parties' objections, the court of appeals denied all relief, finding that Bauer violated both the catch-platform and the safety-belt/lifeline requirements. While the court adopted the referee's findings as to the request for rehearing and application of the catch-platform rule, it agreed with the commission's allowance of McClellan's amendment, concluding that the amendment deadline was merely advisory.

_____

*Dunlevey, Mahan & Furry, L.P.A., Gary W. Auman* and *D. Patrick Kasson*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Cheryl J. Nester*, Assistant Attorney General, for appellee Industrial Commission.

*Gibson & Robbins-Penniman* and *Diane Burris*, for appellee McClellan.

*Per Curiam*.

{¶ 9} Three questions are presented for our review: (1) Did the commission abuse its discretion in allowing the amendment of McClellan's VSSR application to allege a violation of Ohio Adm.Code 4121:1-3-03(J)(1), the safety-belt/lifeline requirement? (2) Did the commission abuse its discretion in finding that Ohio Adm.Code 4121:1-3-09(F)(1), the catch-platform requirement, applies to gutter repair? and (3) Did the commission abuse its discretion in granting rehearing based on McClellan's affidavit? For the following reasons, we hold that the commission properly allowed McClellan's amendment and found a violation of Ohio Adm.Code 4121:1-3-03(J)(1). We further hold that the commission did not abuse its discretion in interpreting Ohio Adm.Code 4121:1-3-09(F)(1), but that the commission did abuse its discretion in granting rehearing to find a violation of this rule. Accordingly, we affirm in part and reverse in part.

*VSSR Application Amendment*

{¶ 10} Bauer first argues that McClellan's amendment was untimely under Ohio Adm.Code 4121-3-20(A)(1). Paragraph (A) of this rule establishes a statute of limitations — two years from the claimant's injury date — for filing VSSR applications. State ex rel. Kirby v. S.G. Loewendick & Sons (1992), 64 Ohio St.3d 433, 435-436, 596 N.E.2d 460, 462. Paragraph (A)(1) provides the deadline for amending these applications, but allows only amendments that "merely clarify a previously alleged violation" and do not "raise any unstated claim." For complying amendments, this paragraph provides:

"Claimant or his representative may submit an amendment of his [VSSR] application * * * beyond the expiration of two years following the date of injury * * *. *Any such amendment must be submitted within thirty days of the receipt by the claimant or his counsel of the report of the investigation by the industrial commission into the alleged safety violation.* * * * Such amendment shall set forth

all specific safety requirements omitted from the application made prior to the expiration of the two-year period which the claimant alleges were the cause of the injury * * *, but which were omitted by reason of mistake or incompleteness." (Emphasis added.)

{¶ 11} The commission's rules are subject to the canons of statutory construction, State *ex rel. Miller Plumbing Co. v. Indus. Comm.* (1948), 149 Ohio St. 493, 496-497, 37 O.O. 197, 199, 79 N.E.2d 553, 555, including the canon that words be given their plain and ordinary meaning. *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.* (1979), 57 Ohio St.2d 51, 54, 11 O.O.3d 214, 216, 386 N.E.2d 1107, 1109. Thus, Bauer points out that most dictionaries define "must" in terms of necessity or obligation. See, *e.g.*, Webster's Third New International Dictionary (1986) 1492. Bauer argues that the italicized sentence in Paragraph (A)(1) forbids amendments filed more than thirty days after claimant's receipt of the commission's VSSR report. We would accept Bauer's argument had we not already overridden the commission's authority to refuse those amendments that merely clarify the original charges.

{¶ 12} Fueled by the principle that "technical rules of procedure should not be allowed to defeat an otherwise valid claim under the Workers' Compensation Act," *State ex rel. Dillon v. Dayton Press, Inc.* (1983), 6 Ohio St.3d 295, 299, 6 OBR 357, 360, 453 N.E.2d 566, 569, we have on at least three occasions clarified the underlying principles governing either the thirty-day amendment deadline in Ohio Adm.Code 4121-3-20(A)(1) or a similar amendment deadline in former Ohio Adm.Code 4121-3-20(D). In *Dillon*, a case under former Paragraph (D), we established a rule allowing claimants to clarify charges through amendment even after the two-year limitations period for filing a VSSR application had expired. *Id.* at 299-300, 6 OBR at 361, 453 N.E.2d at 569-570. We reasoned that amendments to VSSR applications should not be held to a more exacting standard than are amendments to an ordinary civil complaint, which, providing that the cause of

action is not changed, may be amended after the statute of limitation expires. *Id.* at 299, 6 OBR at 360-361, 453 N.E.2d at 569, quoting *Kaiser v. Indus. Comm.* (1940), 136 Ohio St. 440, 445-446, 17 O.O. 22, 24, 26 N.E.2d 449, 453.

{¶ 13} Likewise, in *State ex rel. Bailey v. Indus. Comm.* (1986), 23 Ohio St.3d 53, 54, 23 OBR 127, 128, 491 N.E.2d 308, 310, we specifically held that the claimant could clarify his VSSR application under former Paragraph (D) "despite the running of the statute of limitations for such amendments." See, also, *State ex rel. Kirby v. Loewendick,* 64 Ohio St.3d at 435, 596 N.E.2d at 462 (confirming that "[r]egardless of whether the commission can refuse to consider an amended application filed more than thirty days after the claimant's receipt of its investigation [under Paragraph (A)(1) ], it need not consider a violation that is raised for the first time after the [two-year] statute of limitations has expired").

{¶ 14} And most recently, in *State ex rel. Oliver v. Southeastern Erectors, Inc.* (1996), 76 Ohio St.3d 26, 665 N.E.2d 1108, we implicitly found a claimant's amendment to his VSSR application timely, even though he had filed it more than thirty days after his receipt of the commission's investigation report. See [*State ex rel.*] *Oliver v. Southeastern Erectors* (June 23, 1994), Franklin App. No. 93APD04-597, unreported. The commission maintained in *Oliver* that the claimant's amendment was untimely under Paragraph (A)(1), but we did not specifically dispose of this argument due to our finding that the claimant's amendment charged a VSSR that either was similar to or referred to the VSSRs cited in his application. We were satisfied that these references and similarities provided sufficient notice to the employer of the added VSSR. *Id.* at 28-29, 665 N.E.2d at 1111. Inherent in this finding is the conclusion that the amendment "merely clarified" the previously alleged violations, without "rais[ing] any unstated claim," within the meaning of Paragraph (A)(1).

{¶ 15} Accordingly, we hold, based on *Dillon* and its progeny, that claimants may amend their VSSR applications to clarify prior charges regardless

of commission amendment deadlines or statutes of limitations. We therefore reject Bauer's argument that McClellan's amendment is absolutely barred by the deadline in Ohio Adm.Code 4121-3-20(A)(1).

{¶ 16} Bauer also argues that McClellan's amendment alleges a previously unstated claim, not merely a clarification. Bauer insists that the reference in Ohio Adm.Code 4121:1-3-09(F)(1) to the safety belts and lifelines as alternative safety measures is not enough to put an employer on notice of an additional VSSR under 4121:1-3-03(J)(1). *Oliver, supra*, specifically dispenses with this argument.

{¶ 17} In *Oliver*, the claimant also alleged in his application a violation of Ohio Adm.Code 4121:1-3-09(F)(1), among other rules, and later attempted to amend with a violation of Ohio Adm.Code 4121:1-3-03(J)(1). As mentioned, we found that the specific safety requirements cited in the application either referred or were conceptually similar to Ohio Adm.Code 4121:1-3-03(J)(1) and, therefore, that the amendment was permissible. We concluded:

"[T]he omitted and cited provisions are sufficiently related so as to adequately apprise the parties of a potential violation of Ohio Adm.Code 4121:1-3-03(J)(1) as well. Accordingly, Ohio Adm.Code 4121:1-3-03(J)(1) should be treated as having been raised initially." *Id*., 76 Ohio St.3d at 28-29, 665 N.E.2d at 1111.

{¶ 18} On this authority, we find McClellan's amendment acceptable as a clarification under Ohio Adm.Code 4121-3-20(A)(1).

*Catch-Platform Requirement as Applying to Gutter Removal*

{¶ 19} Bauer next argues that "roofing," for the purpose of Ohio Adm.Code 4121:1-3-09(F)(1), does not include gutter repair. We reject this argument for the same reason the court of appeals did.

{¶ 20} Ohio Adm.Code Chapter 4121:1-3 covers construction work, which is defined in Ohio Adm.Code 4121:1-3-01(A):

"Activities within the scope of this code, generally referred to herein as 'construction,' include the demolition, dismantling, excavation, construction, erection, alteration, repair * * * of buildings and other structures.

"This code covers construction activities of employees whose employer engages in such work as its principal business.  It also covers employees of other employers when the activities are performed in the course of new construction or substantial reconstruction of all or part of an existing structure, as well as substantial demolition or razing of an existing structure, but does not cover employees of such other employers when the activities are performed in the ordinary course of maintenance work."

{¶ 21} Ohio Adm.Code 4121:1-3-09, titled "Roofing Devices," provides with respect to pitched and flat roofs:

"(F)(1)  Catch platforms for pitched roofs.

"On pitched roofs with a rise of four inches in twelve or greater, sixteen feet or more above ground, and not having a parapet of at least thirty inches in height, catch platforms shall be installed.  The platform shall extend two feet beyond the projection of the eaves and shall be provided with a standard guardrail substantially fixed in place.  Safety belts attached to a lifeline which is securely fastened to the structure may be used in lieu of a catch platform.

"(2)  For flat roofs.

"On flat roofs, not having a parapet of at least thirty inches in height, a standard guardrail substantially fixed in place may be used.  Safety belts attached to a lifeline which is securely fastened to the structure may be used in lieu of a standard guardrail."

{¶ 22} Contrary to Bauer's argument, Ohio Adm.Code 4121:1-3-09 nowhere limits the scope of these provisions to actual roof-laying activity.  Cf. *State ex rel. Sorrells v. Mosier Tree Serv.* (1982), 69 Ohio St.2d 341, 23 O.O.3d 312, 432 N.E.2d 197 (former safety code chapter regulating electrical equipment

limited scope of rules to electrical utility industry). The rule instead refers to roofs of certain dimensions as "devices," treating them just as it does the other roofing-related "devices" for which it provides, *i.e.,* buckets for handling hot tar, pitch or asphalt; felt-laying machines and mechanical moppers; roofing brackets; kettles and tankers; chicken ladders and crawling boards. Ohio Adm.Code 4121:1-3-09(C) through (H). Absent such restriction, the scope of Ohio Adm.Code 4121:1-3-09 is limited to the construction activity defined in Ohio Adm.Code 4121:1-3-01(A).

{¶ 23} Thus, Ohio Adm.Code 4121:1-3-09 operates to protect any construction employee who works with pitched roofs, flat roofs, or any other roofing device mentioned in the rule, and who is injured due to an employer's failure to comply with the duties imposed. While doing construction work on a roof of the dimensions specified in Ohio Adm.Code 4121:1-3-09(F)(1), McClellan fell and was injured because the roof had no catch platform or other permissible safety measures. Bauer is therefore susceptible to liability for this VSSR.

*Rehearing*

{¶ 24} But Bauer alternately argues that even if Ohio Adm.Code 4121:1-3-09(F)(1) applied to McClellan's injury, the commission still abused its discretion in granting rehearing of the initial order exonerating Bauer of this particular VSSR. We agree that Bauer cannot be held liable for violating this safety requirement.

{¶ 25} The court of appeals implied, by adopting the referee's report, that McClellan's affidavit did not constitute new and additional proof for the purpose of the rehearing standard in Ohio Adm.Code 4121-3-20(G)(1)(a). See *State ex rel. Lovell v. Indus. Comm.* (1996), 74 Ohio St.3d 250, 253, 658 N.E.2d 284, 287 (commission did not abuse its discretion in denying rehearing based on claimant's offer to testify in person, as compared to his already admitted deposition testimony). However, the court did not find an abuse of discretion for that reason. The court instead declared the commission's initial interpretation of the catch-

platform requirement an "obvious mistake of law" for which a writ of mandamus would have to issue anyway.

{¶ 26} This finding overlooks the real mistake of law that undermines the commission's and court of appeals' decisions in this cause—their combined failure to recognize that the catch-platform and the safety-belt/lifeline requirements are *alternative* safety measures and cannot be applied simultaneously. Again, Ohio Adm.Code 4121:1-3-09(F)(1) provides for the use of lifelines and safety belts "in lieu of" a catch platform. Therefore, by the express terms of this rule, and as acknowledged in the bureau's construction safety analysis, Bauer had no duty to provide both the specified safety belt/lifeline *and* a catch platform to protect McClellan. Cf. *State ex rel. Maghie & Savage, Inc. v. Nobel* (1998), 81 Ohio St.3d 328, 331, 691 N.E.2d 277, 279 (presence of equivalent means of protection may excuse compliance with specific safety requirement). Accordingly, the commission cannot hold Bauer accountable for both violations at the same time or assess a combined VSSR penalty against Bauer.

{¶ 27} Having found that the commission abused its discretion only in granting rehearing and assessing a violation of Ohio Adm.Code 4121:1-3-09(F)(1), we further find that the court of appeals erred in confirming that assessment. Accordingly, we reverse the court of appeals' judgment to this extent and order that the commission redetermine Bauer's VSSR penalty premised only upon the violation of Ohio Adm.Code 4121:1-3-03(J)(1).

*Judgment reversed in part*
*and affirmed in part.*

MOYER, C.J., PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

_____